(No. 56191.—

THE PEOPLE *ex rel.* RICHARD M. DALEY, State's Attorney, Petitioner, v. JAMES M. SCHREIER, Judge, *et al.,* Respondents.

*Opinion filed October 22, 1982.*

UNDERWOOD and GOLDENHERSH, JJ., specially concurring.

SIMON, J., dissenting.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

James B. Haddad, of Chicago, for respondent James M. Schreier.

Kent R. Brody, of Chicago, for respondents Susan Sweeney and Maribeth Sweeney.

JUSTICE MORAN delivered the opinion of the court:

This is an original action seeking the issuance of a writ of *mandamus*, or in the alternative a supervisory order, directing Associate Judge James M. Schreier of the circuit court of Cook County (respondent) to sentence respondents Susan and Maribeth Sweeny (defendants) in accordance with this court's mandate in *People v. Sweeny* (Oct. 19, 1981), No. 55206.

A chronological account of the proceedings culminating in this action is necessary to an understanding of the case. In *People v. Sweeny* the defendants were indicted, *inter alia*, for the offense of knowingly delivering more than 30 grams of a substance containing cocaine, in violation of section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2)). This section codifies the offense as a Class X felony, the penalty for which is a minimum of six years' imprisonment. Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(3).

Following a bench trial, respondent found both defendants guilty in the "manner and form" charged in the indictment. They filed a motion for a new trial, alleging various errors in the proceedings. In particular, defendants claimed that the statutory classification of cocaine as a narcotic was unconstitutional, and therefore the offense was not punishable as a Class X felony. This was the position adopted by the appellate court in *People v. McCarty* (1981), 93 Ill. App. 3d 898. In ruling on the motion, respondent, by a memorandum of decision, stated:

> "The indictment in this case charges, and this court has so found, the defendants with delivering 30 grams or more of a substance containing cocaine. The issue now raised by the *McCarty* holding is whether this offense is punishable as a Class X felony ***."

In accordance with the *McCarty* decision, respondent concluded that the statutory classification was unconstitutional. He therefore held that the Class X felony penalty provision was inapplicable and sentenced defendants as Class 3

felons. Respondent imposed on each defendant a penalty of 30 months' probation, with six months of periodic imprisonment and a $2,500 fine. All other aspects of their post-trial motion were denied.

Because the trial court held a portion of a statute unconstitutional, the State brought a direct appeal to this court (see 73 Ill. 2d R. 603), challenging respondent's refusal to sentence defendants as Class X felons. The defendants did not cross-appeal their convictions or sentences. On September 30, 1981, during pendency of the appeal, this court reversed the appellate court decision in *People v. McCarty*. We there held that the statutory classification of cocaine was constitutional. (86 Ill. 2d 247.) On October 19, 1981, we issued the following supervisory order in *People v. Sweeny*:

> "In the exercise of this court's supervisory jurisdiction, the portion of the judgment of the Honorable James M. Schreier, Associate Judge of the Circuit Court of Cook County entered on June 25, 1981, in case No. 80-5684, ruling unconstitutional certain portions of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1100 *et seq.*) is reversed, and the sentences entered pursuant to that ruling are vacated. (*People v. McCarty* (Sept. 30, 1981), No. 54745.) *The cause is remanded to the circuit court with directions to resentence defendants in accordance with law.*" (Emphasis added.)

On remand, defendants filed another motion for a new trial, incorporating many of the same grounds as their prior motion. In addition, they alleged that, since they had already served part of a lawfully imposed sentence, it would violate the double jeopardy clause to resentence them to a harsher penalty for the same offense. Further, as to Maribeth Sweeny, it was argued that she had no knowledge that the amount of the substance containing cocaine was more than 30 grams. The State moved to strike the second motion for a new trial on the grounds that the judge lacked jurisdiction to take any action other than that required by this court's mandate.

On January 22, 1982, pursuant to their motion, respondent granted defendants a new trial. He concluded that because he believed defendants could only be guilty of a Class 3 felony, he failed to afford them a fair trial. The case was transferred to another judge, and the State subsequently requested leave to file the petition in the instant case.

The issue is whether this court's mandate, remanding the cause for resentencing only, vested the trial court with jurisdiction to rule upon the second motion for a new trial.

We first consider respondent's contentions that this is not an appropriate case for the exercise of original jurisdiction. He argues that the decision to grant a new trial is discretionary, and *mandamus* will not lie to correct an abuse of discretion. We agree with this statement of the law. (See *International Harvester Co. v. Goldenhersh* (1981), 86 Ill. 2d 366, 369.) However, the question with which we are concerned is not whether respondent's order was discretionary or ministerial, but whether he lacked the power to enter it. *Mandamus* may properly be invoked to expunge a judgment which is void for want of jurisdiction. *People v. Sears* (1971), 49 Ill. 2d 14, 32; *People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 37; *People ex rel. Ward v. Salter* (1963), 28 Ill. 2d 612, 615; *People ex rel. People's Gas Light & Coke Co. v. Smith* (1916), 275 Ill. 210, 215.

It is also argued that *mandamus* will not lie where, as here, no demand was made upon the trial judge to vacate his allegedly erroneous order. However, it has been held that no demand is necessary where the order sought to be expunged involves the public interest as opposed to a purely private right. (*People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 37 and cases cited therein.) Further, we consider the issue presented "to be of considerable importance to the administration of justice" (*People ex rel. Carey v. Covelli* (1975), 61 Ill. 2d 394, 401). Hence, *mandamus* may issue even in the absence of all of the normal criteria. *People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 16; *People ex rel. Carey v. Cov-*

*elli* (1975), 61 Ill. 2d 394, 401; *People ex rel. Carey v. Strayhorn* (1975), 61 Ill. 2d 85, 89.

We turn to the question concerning respondent's jurisdiction to enter the order granting a new trial. As previously noted, our supervisory order directed respondent "to resentence defendants in accordance with the law." Clearly, our mandate required that defendants be sentenced as Class X felons, and the cause was remanded for this limited purpose. No other action on the part of respondent was required or authorized.

As noted by the State, there are numerous cases which hold that a trial court must obey the clear and unambiguous directions in a mandate issued by a reviewing court. (*PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 305; *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 574; *American National Bank & Trust Co. v. Pennsylvania R.R. Co.* (1968), 40 Ill. 2d 186, 192-93; *People ex rel. Bauer v. Henry* (1957), 10 Ill. 2d 324, 325; *People ex rel. Barrett v. Bardens* (1946), 394 Ill. 511, 515; *People ex rel. Campo v. Matchett* (1946), 394 Ill. 464, 469; *People ex rel. Horberg v. Waite* (1909), 243 Ill. 156, 160-61.) "[T]he rule is that '[w]here *** the directions of a reviewing court are specific, a positive duty devolves upon the court to which the cause is remanded to enter an order or decree in accordance with the directions contained in the mandate. Precise and unambiguous directions in a mandate must be obeyed.' " (*Stuart v. Continental Illinois National Bank & Trust Co.* (1979), 75 Ill. 2d 22, 27-28, quoting from *Thomas v. Durchslag* (1951), 410 Ill. 363, 365.) Thus, when a reviewing court issues a mandate, it vests the trial court with jurisdiction to take only such action as conforms to that mandate. (See *PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 309; *Thomas v. Durchslag* (1951), 410 Ill. 363, 366; *People v. Walsh* (1981), 101 Ill. App. 3d 1146, 1147-48; *People v. Lowther* (1980), 85 Ill. App. 3d 735, 739; *People v. Baker* (1980), 85 Ill. App. 3d 661, 662.) Any other order issued by

the trial court is outside the scope of its authority and void for lack of jurisdiction. (See, *e.g.*, *People ex rel. Barrett v. Bardens* (1946), 394 Ill. 511.) Indeed, it has been held that even where this court's directions are erroneous, the trial court is nevertheless required to strictly follow those directions. *People ex rel. Campo v. Matchett* (1946), 394 Ill. 464, 469.

Respondent seeks to avoid the application of these principles on the ground that our mandate made relevant an element of the offense which he had considered superfluous. Essentially, he contends that under his interpretation of the statute it was irrelevant whether defendants knowingly delivered more than 30 grams of a substance containing cocaine. Since he believed that delivery of any quantity was only a Class 3 felony, he never specifically found defendants guilty of a Class X felony. Respondent asserts that considerations of fairness dictate that defendants receive a new trial before they are sentenced as Class X felons.

This reasoning ignores a critical point. Although respondent may have considered irrelevant the quantity of the substance delivered, he did find that defendants knowingly delivered over 30 grams. Indeed, as previously noted, respondent specifically stated that "[t]he indictment in this case charges, *and this court has so found,* the defendants with delivering 30 grams or more of a substance containing cocaine." (Emphasis added.) Further, the defense and prosecution stipulated that 112.7 grams of a substance containing cocaine was delivered to the undercover agent. Although Maribeth Sweeny participated in only one of the sales, the amount involved exceeded 30 grams. Thus, it is clear that if defendants were guilty of any offense, they were guilty of a Class X felony. Finally, respondent deemed it necessary to consider whether the offense in question was constitutionally punishable as a Class X felony. He never would have reached this issue if he did not initially determine that defendants delivered over 30 grams of the substance in-

volved. For these reasons, we find unpersuasive respondent's assertion that he never found defendants guilty of a Class X felony. Rather, he merely concluded that they could not be *punished* as Class X felons.

In this respect, the present case differs significantly from the circumstances presented in *People ex rel. Daley v. Limperis* (1981), 86 Ill. 2d 459. In that case, the defendants were charged with delivery of more than 30 grams of a substance containing cocaine. Although the evidence clearly supported the charges, the trial court found defendants guilty of delivering less than 30 grams of a substance containing cocaine. The State sought a writ of *mandamus* directing the trial judges to resentence defendants as Class X felons.

In declining to issue the writ, this court noted that "conviction of a lesser offense operates as an acquittal of a greater offense. [Citations.] Thus, the effect of the judgment in each case was to acquit on the charge of delivery of more than 30 grams of a substance containing cocaine." (86 Ill. 2d 459, 466.) For this reason, we held that issuance of writs of *mandamus* would violate the constitutional guarantees against double jeopardy. *People ex rel. Daley v. Limperis* (1981), 86 Ill. 2d 459, 468.

In the instant case, defendants were found guilty as charged, but respondent failed to impose the proper sentence for the offense. "[T]he sentencing provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—1 *et seq.*) are mandatory and *mandamus* will lie to compel compliance with them." *People ex rel. Daley v. Limperis* (1981), 86 Ill. 2d 459, 466; see also *People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537; *People ex rel. Hanrahan v. Wilson* (1971), 48 Ill. 2d 30.

Respondent further contends that, even if he found defendants guilty of a Class X felony, he had a duty to consider whether this finding was erroneous. However, prior to the issuance of our mandate, defendants' original motion for a new trial was already denied, except for that portion chal-

lenging the constitutionality of the statute. The proper course was for respondent to resentence defendants in accordance with our mandate.

Respondent next asserts that a trial judge may vacate his findings at any time prior to, or for 30 days after, a final judgment. (*People v. Heil* (1978), 71 Ill. 2d 458, 461.) He correctly notes that a judgment includes both the conviction and sentence (Ill. Rev. Stat. 1979, ch. 38, par. 1005—1—12). From this premise he argues that when this court vacated defendants' sentences, there was no longer a final judgment. Consequently, respondent allegedly retained jurisdiction over the cause and could properly grant a new trial.

Even if we were to assume the correctness of this proposition, it is not applicable in the instant case. It is irrelevant whether or not respondent had jurisdiction to vacate his findings because there was no longer a final judgment. Respondent's order failed to comply with our mandate, and for that reason he lacked jurisdiction to enter it.

Accordingly, we hold that a writ of *mandamus* shall issue directing the respondent to comply with our prior mandate and to resentence defendants as Class X felons.

*Writ awarded.*

JUSTICE UNDERWOOD, specially concurring:

I agree that *mandamus* was appropriate here because the trial court was under a completely nondiscretionary duty—to impose sentence according to law as directed by our mandate (see *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 574; *Stuart v. Continental Illinois National Bank & Trust Co.* (1979), 75 Ill. 2d 22, 27-28), and *mandamus* is intended as a means of compelling performance of a nondiscretionary act. *People ex rel. Bauer v. Henry* (1957), 10 Ill. 2d 324; see also *International Harvester Co. v. Goldenhersh* (1981), 86 Ill. 2d 366, 369.

JUSTICE GOLDENHERSH, also specially concurring:

Although I agree with the majority that the respondent

judge erred, I do not agree that the circuit court was without jurisdiction to enter the order.

In *O'Brien v. People* (1905), 216 Ill. 354, the court said:

"Jurisdiction is the power to hear and determine the subject matter in controversy between the parties to a suit. If the law confers the power to render a judgment or decree, then the court has jurisdiction. [Citations.] Jursidiction of the particular matter does not mean simple jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which the particular case belongs. [Citations.] Whether a complaint does or does not state a cause of action is, so far as concerns the question of jurisdiction, of no importance, for if it states a case belonging to a general class over which the authority of the court extends, then jurisdiction attaches and the court has power to decide, whether the pleading is good or bad. [Citations.] Jurisdiction does not depend upon the rightfulness of the decision. It is not lost because of an erroneous decision, however erroneous that decision may be. [Citations.]" 216 Ill. 354, 363-64.

When the cause was remanded and the mandate issued, the circuit court was vested with jurisdiction to proceed in accordance with the mandate. That jurisdiction empowered it to make the wrong, as well as the right, decision. In failing to follow the mandate it erred. It erred in the course of performing a discretionary act and *mandamus* is, therefore, not an appropriate remedy. The proper method to correct its action is by supervisory order. See *People ex rel. Carey v. Strayhorn* (1975), 61 Ill. 2d 85.

JUSTICE SIMON, dissenting:

I disagree neither with the majority's view that the circuit court was bound to follow the mandate it received from this court nor with the cases the majority cites in support of that proposition. My difference is with regard to what our supervisory order instructed Judge Schreier to do. Our direction to the circuit court was to resentence the defendants "in accordance with law."

As I understand the law it affords to a trial judge, so long as he has jurisdiction and for 30 days after sentencing, the opportunity to correct any errors he concludes he has made in a criminal case. This correction can take the form of allowing a motion for a new trial or an acquittal. This was our holding in *People v. Van Cleve* (1982), 89 Ill. 2d 298, 304-05, and in *People v. Heil* (1978), 71 Ill. 2d 458, 461.

In *Van Cleve* we said:

"We consider that a trial judge who has denied a motion for a directed verdict at the close of the evidence can enter a judgment of acquittal following a guilty verdict, if the judge concludes that the refusal to direct a verdict was erroneous." 89 Ill. 2d 298, 303-04.

Thus, I believe that Judge Schreier properly had jurisdiction to order a new trial for the defendants after this court by its supervisory order vacated the sentence of probation. After that there was no final judgment in this case, for section 5—1—12 of the Unified Code of Corrections defines "judgment" as including "the sentence pronounced by the court." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—1—12.) Because a final judgment had not been entered in the case Judge Schreier retained the inherent power to vacate any of his orders or factual findings at any time prior to (*Van Cleve*), or for 30 days after (*Heil*), a final judgment.

The fact that the trial judge had already denied defendants' motion for a new trial did not preclude considering a second motion or reconsidering the first motion for a new trial during this period. Had it been the intention of this court to issue a supervisory order which precluded the trial court from doing anything other than imposing a sentence of six years or more, I believe that we would have been ignoring the law and the inherent authority of the trial judge to enter such orders as he deems necessary to correct any errors he had made so long as he retains jurisdiction.

I dispute the narrow interpretation that the court gives to the mandate we issued in this case. The majority construes that mandate as permitting only resentencing, but

this interpretation ignores the express terms of the supervisory order which directed the circuit court judge to resentence the defendants *"in accordance with law."* (Emphasis added.) In this case, "law," as I construe our order, included the judge's inherent power to reconsider whether the defendants should have a new trial when he later concluded that he did not give the defendants a fair trial.

This is particularly significant here because of the posture in which the petition for the issuance of a writ of *mandamus* comes to us. As the majority points out, the supervisory order was required because Judge Schreier, in trying the case, had followed the appellate court opinion in *People v. McCarty* (1981), 93 Ill. App. 3d 898, which at the time of trial was the controlling law. However, after the trial, and while an appeal in this case was pending in this court, we reversed that appellate court decision. (*People v. McCarty* (1981), 86 Ill. 2d 247.) The only issue which we considered in entering the supervisory order was whether cocaine could properly be classified as a narcotic. We gave no attention to any objection the defendants might have raised to their conviction on any other ground in the event we held that cocaine was a narcotic. Thus, any errors which defendants may have found in the trial had not been reviewed by any court prior to Judge Schreier's allowance of a new trial.

I support Judge Schreier's position not by reference to any of the evidence in this case, but rather on the authority a court has so long as it retains jurisdiction. I see no way in justice and in fairness to circumvent the trial judge's own statement that he had not given the defendants a fair trial. This was an expression of conscience which I believe our judicial system must respect so long as it was made in good faith. There is no suggestion here that Judge Schreier was acting in any other manner.

For these reasons, and particularly in view of the trial judge's frank acknowledgment that he had not given the defendants a fair trial, I believe that the writ of *mandamus*

should not issue and that this court should respect Judge Schreier's order granting a new trial before another circuit court judge as a proper and just order and one entered "in accordance with law."