# Illinois Official Reports

## Appellate Court

*People v. Payne*, 2018 IL App (3d) 160105

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDJUAN PAYNE, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0105 |
| Filed<br>Rehearing denied | March 9, 2018<br>April 19, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 10-CF-460; the Hon. Stephen Kouri, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Kerry J. Bryson, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, David J. Robinson, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Presiding Justice Carter and Justice Wright concurred in the judgment and opinion. |

¶ 1   The defendant, Edjuan Payne, appeals from a retrospective fitness finding that he was restored to fitness, entered pursuant to this court's remand in *People v. Payne*, 2015 IL App (3d) 120147-U.

¶ 2   FACTS

¶ 3   The facts are more fully set forth in this court's prior order, *Payne*, 2015 IL App (3d) 120147-U. The victim in this case, O.D., was found dead in an alley on May 13, 2010. Her infant granddaughter was found with her, injured but alive. The defendant was charged with two counts of murder for the death of O.D. and attempted murder and aggravated battery of a child for the injuries to the granddaughter. Prior to trial, the defendant was examined by Dr. Ryan Finkenbine regarding the defendant's fitness and sanity. On August 27, 2010, the parties stipulated that if Dr. Finkenbine was called as a witness, he would testify that he diagnosed the defendant with a psychiatric mood disorder and concluded that the defendant was not fit to stand trial at that time. The trial court found the defendant unfit to stand trial.

¶ 4   Dr. Nageswararao Vallabhaneni filed a 90-day fitness evaluation report with the court, dated February 17, 2011, indicating that the defendant did not have a serious mental illness and performed well on the fitness test. At the fitness restoration hearing on March 11, 2011, defense counsel indicated that, based on that report, the defendant had attained fitness for trial. He stated that the parties stipulated to the report and that Dr. Vallabhaneni would testify consistent with the report. Defense counsel also stated that the defense would stipulate to the finding of fitness. The prosecutor agreed with the stipulation and finding. The trial court stated that it would make the finding based on the stipulation that the defendant was now fit to stand trial. The defendant went to trial and was convicted of all counts.

¶ 5   On appeal, the defendant challenged the fitness restoration hearing, arguing that the trial court failed to make an independent determination of the defendant's fitness to stand trial. This court found that it was ambiguous whether the finding of fitness was based upon the trial court's analysis and evaluation of the expert's stipulated testimony, which was proper, or whether the finding was based on the parties' stipulation of the ultimate conclusion that the defendant was fit, which was not proper. Thus, this court remanded for a retrospective fitness hearing, ordering the trial court to consider Dr. Vallabhaneni's February 17, 2011, report regarding the defendant's fitness, as well as the transcripts of the hearings between the original finding of unfitness on August 27, 2010, and the March 2011 fitness restoration hearing.

¶ 6   On remand, the trial court and the defense attorney expressed confusion regarding the stipulation regarding fitness. The trial court stated that it did not rely upon defense counsel's stipulation as to the defendant's fitness and had instead made a finding that the defendant was fit for trial based upon the content of the reports. At the retrospective fitness hearing, the trial court clarified that it did not rely upon the stipulation of fitness, reviewed the February 2011 report, considered the stipulation that the doctor would testify consistently with that report, and found retroactively that the defendant was fit to stand trial. The trial court noted that there was nothing at trial that made him question that finding. The trial court did not indicate that it considered the transcripts of the hearings between August 27, 2010, and March 2011, although he was the trial court judge for those hearings. The defendant appealed.

¶ 7                                                    ANALYSIS

¶ 8        The defendant argues that the trial court did not comply with the mandate on remand from this court for a retrospective fitness hearing. The defendant points out that the trial court made no mention of the transcripts of the hearings referenced by the appellate court. The State argues that the trial court properly followed the mandate. It also argues that the defendant waived the issue by agreeing to the procedure used by the trial court.

¶ 9        Where directions from a reviewing court are specific, the court to which the cause is remanded has a positive duty to enter an order or decree in accordance with the directions contained in the mandate. *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276 (1982). Whether the trial judge complied with this court's mandate is a question of law subject to *de novo* review. *Emerald Casino, Inc. v. Illinois Gaming Board*, 366 Ill. App. 3d 113, 118 (2006).

¶ 10       Under principles of due process, a defendant may not be prosecuted if he is unfit to stand trial. *People v. Shum*, 207 Ill. 2d 47, 57 (2003). A defendant is presumed to be fit to stand trial or to plead, but he will be found unfit if his mental or physical condition prevents him from understanding the nature and purpose of the proceedings against him or from assisting in his own defense. *Id.*; 725 ILCS 5/104-11(a) (West 2010). If there is a *bona fide* doubt concerning the defendant's fitness, the trial court must hold a fitness hearing. *Shum*, 207 Ill. 2d at 57. At the fitness hearing, the State bears the burden of proving that the defendant is fit by a preponderance of the evidence. 725 ILCS 5/104-11(c) (West 2010). A defendant who has previously been found unfit is presumed to remain unfit until there has been a valid hearing finding him fit. *People v. Thompson*, 158 Ill. App. 3d 860, 865 (1987). The trial court's role in assessing the defendant's fitness must be an active determination, not reliant solely on an expert's conclusion that the defendant is fit. *People v. Gipson*, 2015 IL App (1st) 112451, ¶¶ 29-30.

¶ 11       Historically, when a defendant was denied his right to a fitness hearing, courts automatically reversed the defendant's conviction and remanded for a new trial. See, *e.g.*, *People v. Gevas*, 166 Ill. 2d 461, 467-68 (1995); *People v. Birdsall*, 172 Ill. 2d 464, 479 (1996). [1] For example, in *Gevas*, the Illinois Supreme Court reversed the defendant's convictions for murdering his two infant children, finding that the trial court should have held a fitness hearing. *Gevas*, 166 Ill. 2d at 467-68. The *Gevas* court found that, two years later, it would be impossible to conduct a meaningful retrospective hearing as to defendant's fitness at the time of trial and sentencing. *Id.* at 471. In reversing and remanding, the *Gevas* court noted that relatively few judicial resources had been expended on the case, as defendant pleaded guilty and the sentencing hearing was very brief. *Id.* at 472.

¶ 12       In *People v. Burgess*, 176 Ill. 2d 289, 303 (1997), however, the supreme court—while acknowledging its previous stance on retrospective fitness hearings and noting the difficulty of determining the mental functioning of the defendant after the fact—departed from the rule of

---

[1] For the most part, the *bona fide* doubt as to the defendant's fitness in these cases arose by virtue of an old version of section 104-21 of the Code of Criminal Procedure (725 ILCS 5/104-21(a) (West 1994)) that was interpreted as providing that, if the defendant was taking psychotropic medication, there was a *bona fide* doubt as to the defendant's fitness, and a fitness hearing must be held. That statute has been amended to remove the presumption of unfitness solely by virtue of the psychotropic drugs. 725 ILCS 5/104-21(a) (West 2010). However, the cases are still applicable here in terms of the remedy when the defendant's fitness hearing is inadequate.

automatic reversal in the context of a prior version of the statute, which stated that a defendant who was receiving psychotropic drugs was entitled to a hearing on the issue of fitness (725 ILCS 5/104-21(a) (West 1994)). The court accepted the trial court's finding at a special supplemental hearing that the defendant was not impaired by those drugs at the time of trial.

¶ 13    Following *Burgess* was the case of *People v. Neal*, 179 Ill. 2d 541 (1997), a case also concerned with psychotropic drugs and no fitness hearing under section 104-21(a) of the Code of Criminal Procedure (725 ILCS 5/104-21(a) (West 1996)). The *Neal* court determined that the procedural context of a retrospective fitness hearing did not matter, *i.e.*, whether it was pursuant to a remand order on direct review or in postconviction proceedings, but that the passage of time could matter. *Neal*, 179 Ill. 2d at 553. The *Neal* court noted that a delay of more than a year would be problematic but not necessarily dispositive. *Id.* The court stated that

> "retrospective fitness determinations will normally be inadequate to protect a defendant's due process rights when more than a year has passed since the original trial and sentencing. In exceptional cases, however, circumstances may be such that the issue of defendant's fitness or lack of fitness at the time of trial may be fairly and accurately determined long after the fact. In such cases *** a defendant will not automatically be entitled to have his original conviction and sentence automatically set aside for a new trial." *Id.* at 554.

The *Neal* court found that a case-by-case approach was better and found no problem with the retrospective fitness hearing conducted 15 years after the defendant's trial and sentencing. *Id.*

¶ 14    Rather than automatic reversal, " 'retrospective fitness hearings are now the norm.' " *Gipson*, 2015 IL App (1st) 112451, ¶ 38 (quoting *People v. Mitchell*, 189 Ill. 2d 312, 339 (2000)). This court has already considered the propriety of a new fitness hearing and, despite the passage of three years, determined that the defendant's fitness to stand trial could be "fairly and accurately determined" upon remand for a retrospective fitness hearing. *Payne*, 2015 IL App (3d) 120147-U, ¶ 65. However, it is clear that the trial court had difficulty with the appellate court's instructions on remand and seemed to believe that an explanation for the ruling at the previous fitness hearing was all that was being required, rather than a hearing. We will review the proceedings on remand, however, to determine if the findings on remand comported with due process.

¶ 15    Since the defendant was found unfit, the presumption was that he remained unfit until the contrary was shown. *Gipson*, 2015 IL App (1st) 112451, ¶ 36. At the retrospective fitness hearing, the question was whether the trial court could rule out the possibility that the defendant was still unfit. *Id.* A retrospective fitness hearing requires the same active role of the court in assessing the defendant's fitness as an original fitness or restoration hearing. The record must show that, although the trial court may consider an expert's stipulated findings regarding a defendant's fitness, the trial court did not rely solely on stipulations, or a stipulation as to ultimate fitness, and made an independent evaluation and determination of fitness. *Id.* ¶¶ 29-30.

¶ 16    At the retrospective fitness hearing, the trial court in this case clarified that it did not rely upon the stipulation of fitness, reviewed the February 2011 report, considered the stipulation that the doctor would testify consistently with that report, and found retroactively that the defendant was fit to stand trial. It noted that there was nothing at trial that made it question that finding. The trial judge on remand was the same judge who presided over all of the proceedings subsequent to the original hearing where the defendant was found unfit. *Cf.*

*Gipson*, 2015 IL App (1st) 122451, ¶¶ 15, 35 (fitness restoration hearing was insufficient when expert opinions conflicted, the hearing was the judge's only contact with the defendant, and the judge did not question the defendant or defense counsel). While a better approach would have been to conduct a full retrospective fitness hearing on the record in accordance with our remand order, the proceedings on remand were sufficient so as to afford the defendant due process. The trial court's conclusion that the defendant had been restored to fitness prior to trial, based upon its own observations of the defendant, along with the expert's stipulated findings, was a sufficient independent evaluation and determination of fitness. See *People v. Stahl*, 2014 IL 115804, ¶ 26 ("Ultimately, fitness must be judged based on the totality of the circumstances.").

¶ 17                                    CONCLUSION
¶ 18        The judgment of the circuit court of Peoria County is affirmed.

¶ 19        Affirmed.